**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE ALTABA, INC. | )<br>)<br>) | Case No. 1-20-cv-00813-LPS<br>(Formerly C.A. No.: 2020-0413-<br>JTL in the Delaware Court of Chancery) |

**VERIZON COMMUNICATIONS INC. AND OATH HOLDINGS INC.'S OPPOSITION TO JOINT MOTION TO SEVER AND REMAND CERTAIN CLAIMS TO THE DELAWARE COURT OF CHANCERY**

Claimants Verizon Communications Inc. ("Verizon Communications") and Oath Holdings Inc. (formerly known as Yahoo! Holdings, Inc.) ("Oath" and, together with Verizon Communications, "Verizon") submit the following opposition to Petitioner Altaba, Inc.'s ("Altaba") and the United States of America's Joint Motion to Sever and Remand Certain Claims to the Delaware Court of Chancery (D.I. 6, the "Motion").

1. Petitioner Altaba has dissolved and in this action seeks a judicial determination pursuant to 8 *Del. C.* § 280 of the amount of money it should be required to hold back as security to pay known and contingent claims against it. The United States, on behalf of the IRS, has asserted claims for security against Altaba arising from Altaba's outstanding federal tax liabilities. The United States asserts that this Court has jurisdiction over the United States' claims, and the United States removed this action so this Court could determine the amount of security that Altaba should be required to hold back to compensate the United States for its tax claims.

2. Verizon also has asserted claims for security against Altaba. Those claims arise from Altaba's contractual obligation to indemnify Verizon for certain liabilities, including certain of the federal tax liabilities that are the subject of the United States' claims. Because Verizon's tax-related indemnification claims arise out of the same federal tax liabilities that are the basis of the United States' claims, this Court has supplemental jurisdiction over Verizon's claims, and logic and efficiency dictate that the United States' and Verizon's tax-related claims be adjudicated in the same action. Indeed, Altaba's insistence that the Court remand Verizon's tax-related claims

risks conflicting judgments.  Verizon therefore opposes the Motion to the extent that it seeks to sever and remand Verizon's claims for security arising from Altaba's obligation to indemnify Verizon for federal (and related state) tax liabilities with respect to Altaba's 2017 and prior tax years.

## BACKGROUND

### A. Verizon Purchases Yahoo!, and Altaba Agrees to Indemnify Verizon for Certain Liabilities

3. Prior to June 2017, petitioner Altaba was known as Yahoo! Inc.  Its primary operation involved running the Internet business, Yahoo!.  Verizon Communications agreed to acquire the Yahoo! operating business in 2016, and the transaction closed in June 2017.

4. In connection with Verizon Communications' acquisition of the Yahoo! operating business, Verizon Communications and Altaba entered into a Stock Purchase Agreement dated July 23, 2016, as amended February 20, 2017 (the "Purchase Agreement"), and Verizon Communications, Altaba, and Oath entered into a Reorganization Agreement dated July 23, 2016, as amended as of February 20, 2017 and March 23, 2018 (together, with the Purchase Agreement, the "Transaction Agreements").  Pursuant to the Transaction Agreements, Altaba placed Yahoo!'s operating assets into a newly-created subsidiary, Oath (then known as Yahoo! Holdings, Inc.), and Verizon Communications acquired all of Oath's stock.

5. The Transaction Agreements set forth the rights and obligations of Verizon Communications, Oath, and Altaba for Yahoo!'s historical liabilities.  In particular, the Reorganization Agreement provided that Altaba would retain liability and be responsible for indemnifying Oath for numerous categories of actual or contingent claims.

6. Under Section 5.5 of the Reorganization Agreement, Altaba agreed to indemnify Oath for a number of federal, state, and local tax liabilities, including among other things, all tax

liabilities of Altaba and its subsidiaries relating to the Altaba retained assets and business and all federal and state income tax liabilities relating to Altaba's 2017 tax year including, but not limited to, any federal and state income tax liabilities relating to the sale of Yahoo!'s operating business to Verizon.

### B. Altaba Notifies Verizon It Is Dissolving But Proposes Inadequate Security for Its Indemnification Obligations to Verizon

7. On October 7, 2019, Altaba sent Verizon a letter providing notice that it dissolved on October 4, 2019 and, pursuant to Section 280 of the Delaware General Corporation Law (the "DGCL"), requesting that Verizon submit any claims that Verizon has against Altaba by December 11, 2019.

8. On November 22, 2019, counsel for Verizon sent Altaba a letter setting forth Verizon's claims, which included claims arising from Altaba's obligation to indemnify Oath for liabilities relating to various federal, state, and local tax liabilities (the "Verizon Claims"). Petition Ex. 36.

9. On December 23, 2019, Altaba responded with an offer of security notice letter pursuant to Section 280(b)(2) of the DGCL (the "Offer of Security"), which stated that Altaba intended to hold back only $89.3 million for the claims that Verizon identified in its November 22 letter. Petition Ex. 37.

10. On March 18, 2020, Verizon responded with a notice letter rejecting Altaba's Offer of Security (including the amount and form of security described in the Offer of Security) and explaining why the $89.3 million in holdbacks that Altaba proposed in its December 23, 2019 Offer of Security was insufficient security to provide compensation to Verizon for the Verizon Claims. Petition Ex. 38. In that letter, Verizon requested that Altaba hold back approximately

$3.5 billion as the minimum amount of security that would be sufficient to compensate Verizon for the Verizon Claims.

11. On May 28, 2020, Altaba filed its Verified Petition for Determinations Pursuant to 8 *Del. C.* § 280 (the "Petition") in the Delaware Court of Chancery. D.I. 1 Ex. A. The Petition seeks a judicial determination of the amount of money Altaba must hold back as security to compensate third parties for all known and contingent claims against Altaba. The Petition names the IRS and Verizon, among others, as claimants.

12. On June 4, 2020, the Court of Chancery entered an order requiring Altaba to provide notice to known claimants and requiring any claimants who objected to Altaba's proposed security to enter an appearance and submit a statement of their position by July 2, 2020.

13. On June 16, 2020, the United States removed this action to this Court. D.I. 1. (The "Notice of Removal"). The Notice of Removal states that the United States has a claim against Altaba in the amount of $1,501,161,359 relating to outstanding federal income and employment tax liabilities. Notice of Removal ¶ 9. The Notice of Removal further states that the Court of Chancery lacks jurisdiction over these claims, and that this Court has original jurisdiction over them, because a determination of the United States' claim for security would require a determination of Altaba's outstanding federal tax liabilities under federal law. *See* Notice of Removal ¶¶ 27, 41-44.

14. On June 29, 2020, the United States and Altaba filed the Motion, seeking to sever and remand all claims in the proceeding other than the claims relating to security for the United States' tax claims, and they submitted a proposed order granting the Motion. D.I. 6.

15. On July 2, 2020, Verizon filed a letter stating that it intended to oppose the Motion and requesting that the Court not rule on the Motion until the parties briefed and argued it. D.I.

10.  Also on July 2, Altaba filed a letter indicating that it agreed that the Court should not rule on the motion before the parties briefed and argued it.  D.I. 12.

16. That same day, Verizon filed its Statement of Claimants Verizon Communications Inc. and Oath Holdings Inc. ("Statement of Claims") in this Court.  D.I. 11.  Verizon's Statement of Claims notes that Altaba is obligated to indemnify Verizon for a number of liabilities, including certain federal, state, and local tax liabilities for Altaba's 2017 and earlier tax years.  Statement of Claims ¶ 17.  The Statement of Claims further explains that under relevant federal income tax regulations, Oath and its U.S. corporate subsidiaries are severally liable for Altaba's unpaid federal tax liabilities for the 2017 and earlier tax years, and the IRS may pursue Oath for the full amount of such liabilities, including liabilities for which Altaba has agreed to indemnify Oath pursuant to the Transaction Agreements.  *Id.*  The Statement of Claims therefore states that Altaba should be required to hold back sufficient security to compensate Verizon for its indemnity claims against Altaba, including those relating to Altaba's federal tax liabilities.  *Id.* ¶¶ 19-24.

17. Critically, the federal tax liabilities for which Verizon is severally liable and for which Altaba has agreed to indemnify Verizon, and therefore which form the basis for certain of Verizon's claims for security in this action, are the same federal tax liabilities underlying certain of the United States' claims for security in this action.  Accordingly, certain of the United States' claims for security and Verizon's tax-related claims for security in this action arise out of the very same tax liabilities of Altaba.

## ARGUMENT

### A. Judicial Winding-Up Proceedings Under Sections 280 and 281(a) of the Delaware General Corporation Law

18. The Court of Chancery has described proceedings such as the present action, which involves a petition under Sections 280 and 281(a) of the Delaware General Corporation Law, 8

5

*Del. C.* §§ 280, 281(a), as "judicial involvement, by which dissolving corporations can essentially smoke out claims, pay off claims in accordance with statutory priorities, and establish reserves for contingent claims. By this more detailed method of dissolution, which is optional and set forth in § 281(a), the dissolving corporation's directors and stockholders are rewarded with more certainty and liability protection." *Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 798 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008) (TABLE). That certainty, however, renders it vitally important that the claimants have a full and fair opportunity to assert their claims and present them before the Court. Because the dissolved corporation will distribute to its stockholders whatever is not paid off or reserved for contingent and future claims, a claimant will be left with no recourse against the corporation if sufficient security is not reserved.

      **B.**      **This Court Has Supplemental Jurisdiction Over Altaba's Request for Security Relating to Verizon's Tax-Related Indemnification Claims**

      19.      The United States removed this action pursuant to 28 U.S.C. §§ 1441, 1442, and 1446 on the grounds that a determination of the IRS's claim for security "involves necessary and substantial issues of federal tax law." Notice of Removal ¶ 31. Altaba and the United States now move to sever and remand all other claims asserted in this action. The Motion should be denied as to Verizon's claim for security for its tax-related indemnification claims because those claims arise from the same common nucleus of operative fact as the proceedings relating to the security to be held back for federal tax claims that the United States has removed to this Court.

      20.      Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

21. Three requirements must be satisfied for a Court to exercise supplemental jurisdiction under § 1367: "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative facts, and the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding." *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) (citations omitted) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). All three elements are present in this proceeding.

22. First, this Court has subject matter jurisdiction over Altaba's request for a determination of security with respect to the United States' federal tax claims for the reasons the United States explained in its Notice of Removal. *See U.S. v. Dalm*, 494 U.S. 596, 608 (1990).

23. Second, Altaba's petition seeks an adjudication of the amount of security sufficient to compensate the United States for Altaba's federal tax liabilities and Verizon for its federal tax-related indemnification claims. Both determinations necessarily involve a judicial assessment of Altaba's potential federal tax liabilities, and thus the claims of the United States and Verizon arise from a common nucleus of operative fact.

24. As explained in Verizon's Statement of Claims (D.I. 11), if Altaba does not hold back sufficient security to satisfy its federal tax liabilities for the years 2017 and earlier (which are the basis for a portion of the United States' claims for security), the United States may pursue its tax claims against Oath and its subsidiaries for such tax years, which entities are severally liable for certain taxes under relevant federal income tax regulations. For these reasons, Verizon's tax-related indemnification claims against Altaba, for which Altaba has petitioned for a determination of adequate security, are integrally related to the United States' claims against Altaba, for which Altaba also has petitioned for a determination of adequate security. Accordingly, both Verizon's

and the United States' claims arise from the same common nucleus of operative facts relating to Altaba's federal tax liabilities.

25. Indeed, Altaba has effectively conceded this point with its argument that Verizon's tax-related claims for security are "duplicative" of the United States' claims. Petition ¶ 57(c)(ii). While Verizon does not agree that its claims are "duplicative," they are integrally related, and Altaba does not contest that they arise from the same common nucleus of operative facts.[1]

26. Third, it ordinarily would be expected that Altaba's requests for determinations of security for Verizon's tax-related indemnification claims and the United States' federal tax claims would be tried in the same proceeding, without regard to the federal or state character of the various claims.

27. A number of practical considerations provide further support for a determination that the amount of security for Verizon's tax-related indemnification claims should be tried in the same proceeding as the related claims involving the security for Altaba's federal tax liability to the United States. In fact, Altaba's inclusion of its requests for a judicial determination of adequate security for both Verizon's claims and the United States' tax claims in the very same petition that it originally filed in the Delaware Court of Chancery confirms this point. *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 276 (3d Cir. 2001) (affirming that District Court had supplemental jurisdiction and stating "it would be expected that all of Pryzbowski's claims against the

---

[1] Verizon's tax-related indemnification claims are not duplicative for the reasons described in Paragraphs 31 through 33 below, among others. Moreover, that Verizon's claims arise from contract, rather than any statutory liability, is irrelevant. Federal courts have found that there is a sufficient common nucleus of operative facts to decide claims arising from indemnification contracts. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 316 (3d Cir. 2006) (holding District Court had supplemental jurisdiction over garnishment claim arising from indemnification contract).

defendants would be combined in one judicial proceeding" when plaintiff filed all claims in one proceeding in state court that was subsequently removed).

28.     Because Verizon's tax-related indemnification claims against Altaba derive from Altaba's liability to the United States, the proof for Verizon's claims (and the related discovery) will necessarily overlap—almost entirely—with the proof (and discovery) in this Court regarding the United States' claims.  This Court has found that claims "could be expected to be tried in one judicial proceeding" when the proof for the claims will substantially overlap, which is the case here.  *See B. F. Goodrich Co. v. A. T. I. Caribe, Inc.*, 366 F. Supp. 464, 473 (D. Del. 1973) (finding contract and trademark claims "could be expected to be tried in one judicial proceeding" when "it appears to the Court that proof of BFG's trademark infringement claim and the defenses thereto is likely to overlap considerably with proof of CRM's two contract claims and the defenses thereto.").

29.     Furthermore, unless it is allowed to present its tax-related indemnification claims in this Court, in conjunction with the United States' claims, Verizon may be left without an opportunity to fully and fairly present its claims.  Altaba has already sought to prevent Verizon from participating in any process or discussions with the IRS regarding the amount of security to be held back for Altaba's federal tax liabilities, notwithstanding Verizon's clear interests at stake.  As explained in Verizon's Statement of Claims (D.I. 11 at ¶ 20), on May 6, 2020, counsel for Verizon sent Altaba a letter requesting that Altaba include it in conversations with the IRS about the proposed security for any federal tax claims—a request Verizon had made on numerous prior occasions, both orally and in writing.  On May 22, 2020, Altaba refused that request, asserting that

any attempt by Verizon to contact the IRS directly on these matters would be a breach of the Transaction Agreements.[2] *Id.*

30. If Verizon's tax-related indemnification claims are severed and remanded, Verizon may, once more, be left without the ability to participate in the discussions and negotiations between Altaba and the IRS regarding Altaba's tax liabilities and the appropriate security for such liabilities, and/or be deprived of the ability to understand the magnitude of, otherwise limit or mitigate, and fully and fairly defend its rights and obligations in this proceeding with respect to any potential tax-related liabilities for which it could be severally liable based on an adjudication made by this Court. Nevertheless, Verizon could be the party left responsible for paying Altaba's federal tax liabilities should it turn out that the security Altaba holds back is insufficient. Such a result is inequitable and would prejudice Verizon. *See United Mine Workers of Am.*, 383 U.S. at 726 ("justification [for supplemental jurisdiction] lies in considerations of judicial economy, convenience and fairness to litigants"). In particular, these are tax liabilities that Altaba agreed were its responsibility and obligation pursuant to the terms of the Transaction Agreements. There is a significant risk to Verizon that these tax liabilities of Altaba could be unfairly and unjustly shifted to Verizon if this Court were to sever and remand Verizon's tax-related claims to the Delaware Court of Chancery.

31. Verizon's concern that Altaba seeks to hold back insufficient security is well-founded. The Petition states that the IRS is currently requesting $1,501,161,359 in security for claims related to income and employment tax matters for the 2016 through 2029 tax years. Petition

---

[2] Although Verizon disagrees with Altaba regarding Verizon's right to direct contact with the IRS on these matters under the Transaction Agreements and also believes that Verizon has the right to be included in Altaba's conversations with the IRS about proposed security, Verizon has acted in good faith by refraining from direct contact with the IRS in view of Altaba's position and threats.

10

¶ 53. While Altaba has represented that it will withhold this amount on an interim basis, it intends to ask this Court to order that Altaba will be required to hold back only $659,177,452 in final security with respect to the IRS's claims. Petition ¶¶ 54-55. Altaba contends that this amount is also sufficient to provide compensation for Verizon's tax-related indemnification claims, characterizing Verizon's claims as "duplicative" of the IRS's claim. Petition ¶ 57 (c)(ii). Accordingly, Altaba's position is that no additional security is required for Verizon's federal tax-related indemnification claims. Petition ¶ 58.

32. Altaba's position is unreasonable. As explained in Verizon's Statement of Claims (D.I. 11 at ¶ 19), it is unreasonable for Altaba to seek an amount of security that is approximately $842,000,000 less than the amount of the United States' tax claims against Altaba, and to contend that this significantly lower amount is sufficient security for both the United States' claims and Verizon's tax-related indemnification claims, because the IRS may seek payment from Oath if the amount held back by Altaba proves to be insufficient to cover the United States' claim. In such a case, under the proposal in Altaba's Petition, Verizon would have no way to obtain indemnification from Altaba because nothing more would be held back for Verizon's tax-related indemnification claims than the amount that was set aside for the United States' claims. *Id.*

33. Moreover, Altaba's position is unreasonable because Altaba apparently seeks to hold back a single lump sum to compensate the United States for its potential federal tax liabilities for all tax periods, while Verizon has potential several liability only for certain tax periods. If all or a larger-than-anticipated amount of the security for the United States' claims is unexpectedly used to satisfy the United States' claims for tax periods for which Verizon does not have several liability, it would diminish the remaining security available for the tax periods for which Verizon has potential several liability.

34.     Finally, if the Court severs and remands Verizon's tax-related indemnification claims, there is a risk of inconsistent decisions with respect to Altaba's tax liabilities. Forcing the United States' and Verizon's claims to proceed in different courts could result in this Court reaching one conclusion regarding Altaba's tax liabilities and the appropriate security to be held back to compensate the United States in connection therewith and the Court of Chancery reaching another, inconsistent conclusion regarding some of those same tax liabilities as they relate to the appropriate security for Verizon's tax-related indemnification claims. Supplemental jurisdiction is designed to avoid precisely this type of risk of inconsistent adjudications of the same issues. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995) ("Moreover, the result of an exercise of discretion under § 1367(c) in circumstances like those before the district court would have been two parallel proceedings, one in federal court and one in the state system, and a district court cannot properly exercise its discretion under § 1367(c) without taking that fact into account.").

35.     For all of those reasons, Altaba's petition for a determination of adequate security to compensate Verizon for its tax-related indemnification claims should be adjudicated in the same Court that is deciding Altaba's petition with respect to the security for the United States' claims.

### C.     This Court Should Retain Verizon's State and Local Tax Claims

36.     Because taxpayers are obligated to report to state and local tax authorities federal tax adjustments that may impact the determination of the taxpayers' state and local taxes, any adjustments with respect to Altaba's federal tax liabilities could result in corresponding adjustments to the amounts of its state and local tax liabilities—liabilities that Verizon may be required to pay if Altaba does not reserve sufficient security. Consequently, Verizon's claims related to state and local tax liabilities and the determination of the appropriate security for those

12

claims are directly linked to determinations regarding Altaba's federal tax liabilities, and accordingly, arise from the same common nucleus of operative facts. As a result, retention of those claims in this Court is also necessary and appropriate. Importantly, Verizon is not asking the Court to decide the validity of, or Altaba's actual liability for, any state or local tax claims but rather to determine the appropriate security to be held back by Altaba to ensure that Verizon is adequately compensated for its contractual indemnification claims relating to Altaba's potential state and local tax liabilities.

## CONCLUSION

37.     For the foregoing reasons, Verizon objects to the Motion to the extent that it seeks to sever and remand Altaba's request for a determination of security to compensate Verizon for its federal, state, and local tax-related indemnification claims, and respectfully requests that this Court not sever and remand those aspects of the proceeding. Verizon reserves all rights, arguments, and positions, and waives none, with respect to its tax-related indemnification claims against Altaba.

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL | By: */s/ Michael A. Pittenger* |
|  | Michael A. Pittenger (#3212) |
| William Savitt | Berton W. Ashman, Jr. (#4681) |
| Adam M. Gogolak | David A. Seal (#5992) |
| WACHTELL, LIPTON, ROSEN & KATZ | Hercules Plaza, 6th Floor |
|  | 1313 North Market Street |
| 51 W. 52nd Street | Wilmington, DE  19801 |
| New York, NY 10019 | (302) 984-6000 |
| (212) 403-1000 | mpittenger@potteranderson.com |
|  | bashman@potteranderson.com |
| Dated:  July 13, 2020 | dseal@potteranderson.com |
| 6788504 |  |
|  | *Attorneys for Claimants Verizon Communications Inc. and Oath Holdings Inc.* |